# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FRANCISCO RIVERA, III, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 7503 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 6, 2014, I granted a motion filed by the Commissioner under Fed.R.Civ.P. 60(b) and 62.1 in the case of *Triplett v. Colvin*, 12-CV-4382. Some eleven months after the ruling affirming the ALJ's decision in that case, and after the case had been pending before the Seventh Circuit Court of Appeals for eight months, the Commissioner filed an "Emergency Motion" asking that the court indicate that it would grant the Commissioner's motion to remand the case if the appellate court remanded the matter for that purpose. The motion was unsupported by any citation to case law. The motion didn't indicate what the "emergency" was, only that the Commissioner had – again, eight months after the case had landed in the appellate court, eleven months after the decision in the district court, and well over two years after the case had been filed – given the case "further consideration" and determined it should be remanded. *Triplett v. Colvin*, 12-CV-4382 [Dkt. #47].

The filing was somewhat surprising, especially so late in the game. When the courtesy copy of the motion was delivered to chambers, counsel explained that there had been "drastic changes"[1]

---

[1] This was the phrase used; obviously, if the cases the Commissioner submitted did not represent

continue...

in the law that prompted the Commissioner's change of heart. Counsel was advised that there had been no mention of any such case law in the motion and that the motion could not be granted without such support. Counsel filed an appendix to the motion immediately thereafter, citing to *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. July 10, 2014); *Murphy v. Colvin*, 759 F.3d 811 (7th Cir. July 22, 2014); *Hanson v. Colvin*, 760 F.3d 759 (7th Cir. July 30, 2014); *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014). *Triplett v. Colvin*, 12-CV-4382 (Dkt. #50). Among the issues the Commissioner represented as affected by these cases in *Triplett* were the ALJ's consideration of the effects of obesity on the claimant's capacity for work, the ALJ's treatment of medical opinions, the ALJ's assessment of the claimant's subjective complaints, residual functional capacity, and the use of vocational expert testimony. *Triplett v. Colvin*, 12-CV-4382 (Dkt. # 47, at 2). Since *Triplett*, I have conducted regular, initial reviews of Social Security Disability cases that come before me in an effort to eliminate the possibility of months or even years of waste if there are any apparent issues with the ALJ's opinion that might, under further consideration by the Commissioner, prompt an agreed remand.

In this case, there are some issues, which recur frequently in these cases, that are apparent from initial review of the administrative record. For one, this is another in a long line of cases where the ALJ determines that the plaintiff has moderate limitations on his concentration, persistence, and pace. (R. 28, 34-35). He purported to account for that by limiting the plaintiff "simple, routine tasks" in both his RFC finding and her hypothetical to the vocational expert. (R. 29, 88-89). In the

---

[1]...continue
changes, but simply restatements of existing law, the Commissioner would have arrived at a determination that a remand was necessary well before over two years had passed.

aforementioned *Yurt*, and a number of other cases, the Seventh Circuit has taken ALJs to task for attempting to accommodate concentration problems with simple work or routine work or unskilled work. The fact that a job might be simple or easy to learn does not mean that someone who has difficulty maintaining concentration or focus can perform it. *See, e.g., Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015)(hypothetical question positing a person capable of performing "simple, routine, and repetitive tasks" but unable to perform work involving "fast paced production" did not account for difficulties maintaining concentration, persistence, and pace); *Yurt*, 758 F.3d at 858–59 ("we have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)("In most cases ... employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."). In this instance, plaintiff's past work of assembly machine tender, which the ALJ found him capable of performing (R. 35), seems just the type of job – an assembly line job – where one's attention could not wane. (R. 81-83), https://occupationalinfo.org/75/754685014.html; *cf. Peterson v. Berryhill*, No. 16 C 9340, 2017 WL 2274338, at *3 (N.D. Ill. May 25, 2017)(discussing concentration requirements of simple assembly line work). Other jobs the ALJ found plaintiff could do (R. 37) – again, based on the vocational expert's testimony in response to a limitation to "simple and routine tasks" as opposed to a moderate limitation in concentration – also appear to present concentration and focus issues. Small parts assembler is defined as an assembly line job. https://occupationalinfo.org/70/706684022.html. The job of mail clerk demand both perceptual and digital speed, and accuracy is one of the most

3

important facets.  https://occupationalinfo.org/onet/57302.html.

The ALJ also appears to have given short shrift to the plaintiff's obesity.  While the ALJ found this to be a severe impairment (R. 25), he found that it "would [not] preclude him from performing the modified light exertional residual functional capacity [sic] assessed herein." (R. 31). That means the plaintiff, despite also suffering from severe leg edema and severe degenerative disc disease (R. 25), can hold down a job requiring him to be on his feet most of every day, climb ramps and stairs two-thirds of every day, and climb ladders, ropes, and scaffolds one-third of every day. (R. 29).  That seems a stretch, and the kind of finding that has incensed the Seventh Circuit in the past.  *See, e.g., Goins*, 764 F.3d at 682 ("If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for its lawyer to have said in its brief that the administrative law judge "accommodated [the plaintiff's] obesity by providing that she could never [be required as part of her work duties to] climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch.).''

The ALJ stated that the plaintiff's daily activities – which the ALJ described as "prepares his own meals, mows the lawn, washes dishes, shops in stores, goes to church, rides his bike" – are not limited to the extent one would expect.  (R. 33).  But the ALJ seems to paint an exaggerated picture of the plaintiff's activities which, based on the evidence the ALJ cites, are very limited indeed.  For example, the "meals" plaintiff prepares are bowls of cereal; he lives with his mother and she does the actual cooking. (R. 303).  He only mows the lawn or washes dishes "once in a while. . . on a good day when [his] back doesn't hurt."  (R. 303).  He does not go to church regularly, only "on occasions." (R. 305).  He shops for food every other week; other than that, he shops once a year for clothes. (R. 304).  An ALJ may not disregard a claimant's limitations in performing daily activities.

4

*Meuser v. Colvin*, 838 F.3d 905, 913 (7th Cir. 2016); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008); see also *Williams v. Berryhill*, No. 17-1043, 2017 WL 5171304, at *3 (7th Cir. Nov. 8, 2017)(pointing out that activities like microwaving food, occasionally doing laundry, and driving "are quite minimal.").

Judicial resources are scarce. *See Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991) (Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention.); *see also West v. West*, 694 F.3d 904, 906 (7th Cir. 2012); *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). Rather than continuing through the exercise of the parties briefing this case and the court issuing a ruling -- an exercise that proved to be a waste of judicial resources and the parties' lawyers' time and efforts in *Triplett* – only to have the Commissioner review its actions months later and determine a remand is appropriate, the Commissioner is ordered to review the matter now, with an eye toward its motion in *Triplett*. If the Commissioner determines to proceed with this litigation then, within 21 days of this order, the Commissioner must file a brief statement explaining how, unlike the *Triplett* decision, the ALJ's decision here does not run afoul of the aforementioned Seventh Circuit precedent. If, within that 21 days, the Commissioner determines it best not to proceed, she should so inform the court. *See Pestereanu-Gere v. Berryhill*, 17 C 1719 [Dkt. ## 16, 21] (N.D.Ill. July 6, 2017).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/8/18